THE PEOPLE *ex rel.* Samuel H. McCrea

*v.*

GEORGE F. ATCHISON *et al.*

*Filed at Ottawa June 16, 1880.*

1. LIEN—*duration of lien of special assessment.* The meaning and object of the legislation in relation to the West Park and boulevard in Cook county was to charge the lots, etc., benefited, with their share of the expense of making the improvements proposed in the act, to be ascertained by assessment, and the time of five years was allowed for making a valid assessment. But a valid assessment, once made, is, under the act, declared a lien, and it can only be discharged by payment. The amount of the assessment, when once fixed within five years, remains a charge until paid.

2. SPECIAL ASSESSMENT—*limitation of five years.* The five years' limitation in section 5 of the act of January 27, 1869, in regard to assessments for park purposes, was made for cases of an abortive effort at an assessment, involving the necessity of a new assessment, and has no reference to the case of a first and valid assessment.

APPEAL from the County Court of Cook county; the Hon. MASON B. LOOMIS, Judge, presiding.

Mr. GEORGE W. SMITH, and Mr. R. A. CHILDS, for the appellant:

The list of delinquent lands filed with the county clerk in 1879 included those upon which one or more installments of the "West Park and boulevard assessment" remained unpaid. The application for judgment for taxes for the year 1878 and prior years was refused by the county court, for the reason that the statute did not permit the collection of such assessment after five years from the confirmation of the same.

The validity of the "West Park and boulevard assessment" was not, and is not, called in question. That has been held by this court to have been regularly and properly levied. *Andrews* v. *The People,* 83 Ill. 529.

Section 13 of the act of February 27, 1869, (1 P. L. 1869, p. 340,) provides, that after the confirmation of the assessment the clerk of the circuit court shall file a copy thereof with the clerk of the county court, "and said assessment shall be a lien upon the said several lots," etc. Section 5 of the act of April 19, 1869, provides, that "if any assessment made by virtue of this act, or of the act to which this is an amendment, shall be annulled or set aside, a new assessment may be made, returned and acted upon in like manner and upon like notices, and with the same rights to the parties interested, as in the first. If, from any cause, the commissioners shall fail to collect the whole or any portion of any assessment levied for the purposes authorized by said act, and which shall not be canceled or set aside, the said commissioners may, at any time within *five years* after the confirmation of the original assessment, direct a new assessment to be made,   *   *   *   it being the true intent and meaning of this section to make the costs and expenses of such improvement a charge upon the property assessed therefor, to the amount of its proportional benefit, as hereinbefore provided, for the *full period of five years* from the confirmation of the original assessment, and for such longer period as may be

required to collect, in due course of law, any new assessment hereby authorized within that period."

No new assessment was ever made under the act of April 19, 1869, or the act of May 2, 1873.

The first named act made the assessment a lien and fixed no limit to its duration. The intent of the several acts is to make the property benefited pay the cost of the improvement at whatever distance of time, and not to release it until payment should be made.

Mr. JOHN P. WILSON, for the appellees:

The lien of the original assessment expired five years after its confirmation. No proceedings were ever instituted to levy a second or subsequent assessment upon property which failed to pay the original assessment, so that all provisions of the statutes extending the duration of the lien in case of a second or subsequent assessment have no force or application in the case at bar.

The extension of time to collect a new assessment in nowise extends the lien of the original assessment or the time for its collection.

That it was clearly the intention of the General Assembly that the lien of the original assessment should expire in five years, is apparent from section 9 of the act of 1873. Rev. Stat. 1874, p. 705.

The law abhors secret liens. While an assessment is in the hands of the collector, parties dealing with the property can ascertain, by applying to the proper officer, what is claimed as due upon the property; but after judgment has been rendered on an assessment, if no further steps are taken for its collection, it drops from the books, and nowhere appears as a charge against the property and becomes strictly a secret lien. The act of 1873 was passed to protect purchasers, and provides for giving notice of the assessment through the recorder's office for five years from the confirmation of the original assessment.

The parties who purchased the property in 1878 took it free from the lien of the assessment under the provisions of section 278 of the general Revenue law.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

A majority of this court hold that the limitation to five years, in the statute in question, has reference to the time within which a valid assessment may be made. The meaning and object of the legislation was to charge the land in question with its share of the expense of making the improvement in question, to be ascertained by assessment, and the term of five years was allowed for the making a valid assessment. A valid assessment, once made, was a lien, and could only be discharged by payment of the assessment. This statute was intended to charge the land at once for an unascertained amount, to be fixed by assessment. The only effect of this five years limitation is, that the amount must be fixed and limited to a specific amount within five years; otherwise the land should be discharged. The amount, when fixed, was to remain a charge till paid. The five years limitation was made for cases of an abortive effort at assessment, involving the necessity of a new assessment, and has no reference to the case of a first valid assessment.

The judgment must be reversed, and the cause remanded for judgment against the lands for the assessments in question.

*Judgment reversed.*